J-A26016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.C.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| B.L.S. | : | |
| | : | |
| Appellant | : | No. 813 MDA 2017 |

Appeal from the Order Dated April 17, 2017
In the Court of Common Pleas of Adams County Civil Division at No(s):
2008-S-1412

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY OLSON, J.:                **FILED JANUARY 11, 2018**

B.L.S. ("Father") appeals from the order dated and entered on April 17, 2017, granting the petition for modification of custody filed by T.C.S., ("Mother") awarding the parties shared legal custody, and Mother primary physical custody, of the parties' two male children, B.S.S., born in January of 2004, and C.M.S., born in October of 2007 (collectively, the "Children").  The order further awarded Father partial physical custody in accordance with a schedule.  After careful review, we affirm.

The factual background and procedural history of this appeal are as follows.  On September 26, 2008, Mother filed a complaint in divorce against Father.  On October 22, 2008, Mother filed an amended complaint in divorce, which included a count for shared legal custody and primary physical custody

of the Children.  On November 5, 2008, Father filed a counterclaim to Mother's amended complaint.

On December 9, 2008, Mother filed a petition for special relief against Father, seeking exclusive possession of the marital residence and alleging that she feared Father.  On December 18, 2008, Father filed an answer to petition for special relief and a counter-petition, seeking exclusive possession of the marital residence.

On April 1, 2009, the trial court entered a stipulated order for custody, setting forth that the parties would share legal and physical custody of the Children.  Under the stipulated order for custody, Father would have physical custody of the Children on Mondays from 7:30 a.m. to Wednesdays at 7:30 a.m.  Mother would have physical custody of the Children from Wednesdays from 7:30 a.m. to Fridays at 4:30 p.m.  The parties would alternate the weekends of physical custody from Fridays at 4:30 p.m. to Mondays at 7:30 a.m.  Either party could request additional time with the Children on the days they would not normally exercise physical custody.  The other parent was not to unreasonably deny the parent's request for additional time with the Children.

Thereafter, on May 29, 2013, the parties entered into a custody stipulation that provided them with equally shared physical custody of the Children whereby Mother would have physical custody of the Children from Wednesdays from 8:00 a.m. to Friday at 4:30 p.m. and Father would have

physical custody every Monday at 8:00 a.m. until Wednesday at 8:00 a.m. The parties would alternate physical custody on weekends from Friday at 4:30 p.m. until Monday at 8:00 a.m. The trial court entered the divorce decree on October 15, 2013.

On June 27, 2016, Mother filed a petition for contempt and petition to modify custody. On July 28, 2016, Father filed an answer to Mother's petition for contempt and modification that he had no objection to continuing to share legal custody but strongly believed that he should have majority physical custody of the Children. The trial court deemed his objection a cross-petition for modification. *See* N.T., 12/13/16, at 4-5.

On September 15, 2016, the trial court conducted *in camera* interviews with the Children. Subsequently, the trial court held a custody hearing on December 13, 2016 and April 10, 2017. At the hearing, the trial court considered both parents' requests, and heard testimony from the parents, Mother's fiancé, the Children's maternal grandfather, and Mother's former boyfriend.

On April 10, 2017, the trial court entered the order granting Mother primary physical custody of the Children, and Father partial physical custody. The order further granted Mother's petition for modification of physical custody, giving Mother periods of partial physical custody every Tuesday from 8:00 a.m. until Wednesday at 8:00 a.m., and alternating weekends from Friday at the conclusion of the Children's school day (or 4:30 p.m. on non-

school days) until Sunday at 7:00 p.m. Finally, the order stated that all other aspects of the custody stipulation dated May 29, 2013 were adopted as an order of court, and were to remain in full force and effect. The trial court addressed the best interest factors set forth at 23 Pa.C.S.A. § 5328(a) in a separate written memorandum filed contemporaneously with the order.[1]

On May 16, 2017, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal. In his brief on appeal, Father raises the following issues:

1. Whether the trial court committed an abuse of discretion or error of law in modifying a shared 50/50 physical custody arrangement in effect for 8 years by failing to objectively analyze and properly weigh the sixteen factors listed in 23 Pa.C.S.A. § 5328(a) and concluding that Father is teaching the [C]hildren how to hate when there was no evidence presented at trial that Father communicated to the [C]hildren or included the [C]hildren in any communications with Mother that would be construed as "hateful."

2. Whether the trial court abused its discretion and committed an error of law in concluding that the level of conflict between the parties does not favor a shared arrangement when for the last 8 years the parties shared custody of the [C]hildren and credible evidence was presented that [the C]hildren are happy, healthy, doing extremely well in school, are liked by their peers, excel in sports and share a strong bond with Father?

---

[1] In addition, the trial court denied Mother's petition for contempt, with prejudice, as there was an existing stipulated custody agreement that was never adopted as a custody order of court. Trial Court Opinion, 4/17/17, at 2. Although the trial court referenced cross-petitions for contempt, it corrected this reference in its May 31, 2017 opinion, stating that only Mother filed a petition for contempt. *See* Trial Court Opinion, 5/31/17, at 1, n1.

- 4 -

Father's Brief, at 3-4.[2]

First, Father argues that the trial court committed an abuse of discretion or error of law in modifying an eight-year shared 50/50 physical custody arrangement entered by stipulated order on April 1, 2009. More specifically, Father argues that the trial court failed to objectively analyze and properly weigh the sixteen factors pertaining to custody set forth at 23 Pa.C.S.A. § 5328(a). Father complains that the trial court erroneously concluded that he is teaching the Children how to hate, when there was no evidence presented at trial that Father communicated to the Children, or included the Children in any communications with Mother, that would be construed as "hateful." *Id.* at 3-4, 14.

Second, Father contends that the trial court abused its discretion and committed an error of law in concluding that the level of conflict between the parties does not favor a shared arrangement. Father asserts that, for the past eight years, the parties shared custody of the Children, and that there was credible evidence that the Children are happy, healthy, doing extremely well

_____

[2] In argument section of his brief, Father challenges the trial court's decision to modify the custody agreement as an improper sanction for his contempt of the alleged existing custody "order," citing *Langendorfer v. Spearman*, 797 A.2d 303, 308 (Pa. Super. 2002); *G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super 2013). Father's Brief, at 19-20. Father waived this argument by failing to raise the issue in his concise statement and statement of questions involved in his brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

in school, are liked by their peers, excel in sports, and share a strong bond with Father. *Id.* at 3-4, 21.

Citing *Wiseman v. Wall*, 718 A.2d 844 (Pa. Super. 1998), Father asserts that the trial court committed an error of law and/or abused its discretion when it determined that a partial custody arrangement was in the best interest of the Children. *Id.* at 21, 25. Father requests this Court to reverse the trial court's decision and remand with instructions to enter a custody award granting Father and Mother shared legal custody and 50/50 shared physical custody of the Children. *Id.*

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A. § 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained

by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting **Jackson***

***v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

***M.A.T. v. G.S.T.***, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (quotation

and citations omitted); ***see also Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111

(Pa. Super. 2007) ("An abuse of discretion is not merely an error of judgment;

if, in reaching a conclusion, the court overrides or misapplies the law, or the

judgment exercised is shown by the record to be either manifestly

unreasonable or the product of partiality, prejudice, bias or ill will, discretion

has been abused.").

With any custody case decided under the Act, the paramount concern is

the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338.

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. **See E.D. v. M.P.**, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." **J.R.M. v. J.E.A.,** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

Section 5328(a) of the Act provides as follows:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

Further, we have explained:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "Section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-823 (Pa. Super. 2014).

In **Wiseman**, this Court held that trial courts must analyze the following four factors when considering a shared custody award: (1) both parents must be fit, capable of making reasonable child rearing decisions and willing and able to provide love and care for their children; (2) both parents must

- 10 -

evidence a continuing desire for active involvement in the child's life; (3) both parents must be recognized by the child as a source of security and love; (4) a minimal degree of cooperation between the parents must be possible. ***Wiseman***, 718 A.2d at 848 (citations omitted).

This Court decided ***Wiseman*** prior to the Act, which became effective on January 24, 2011. ***See*** 23 Pa.C.S.A. § 5321-5340. Section 5328(a) encompasses the ***Wiseman*** shared custody factors. For example, ***Wiseman*** factor requiring parents to have a minimal degree of cooperation is encompassed in Section 5328(a)(13), which requires trial courts to consider, *inter alia*, "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another." Accordingly, as the Act requires the trial court to consider each of the factors set forth in Section 5328(a), the trial court need not separately consider the ***Wiseman*** factors.

Moreover, the Act requires that the trial court consider each of the Section 5328(a) custody factors when making any award of custody, *i.e.*, primary, partial, or shared physical custody. The Act does not provide that any one factor must control the court's decision, but courts should give weighted consideration to those factors affecting the safety of the child. ***See M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013).

Here, it is clear the trial court considered Section 5328(a) by taking into account the various factors, including the level of conflict between Mother and Father and their difficulty in cooperating, especially in view of Father's reaction

to Mother's new fiancé. After our careful review of the record, we find competent evidence to support the trial court's factual findings with regard to the Section 5328(a) best interest factors. We find that the trial court did not make an error of law, and its conclusions are not unreasonable in light of the sustainable findings of the trial court regarding the Children's best interests. *C.R.F.*, 45 A.3d at 443. Thus, we find that Father's issues lack merit, and we will not disturb the trial court's credibility and weight determinations. Accordingly, we affirm the order of the trial court on the basis of the trial court opinions filed on April 17, 2017 and May 31, 2017. Because we have adopted the trial court's opinions as our own, we direct the parties to include the opinions in all future filings relating to our examination of the merits of this appeal, as expressed herein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2018

IN THE COURT OF COMMON PLEAS OF ADÅMS COUNTY,
PENNSYLVANIA
CIVIL

TANYA C. SCHISLER                                    08-s-1412

vs,

BRAD L. SCHISLER

## ORDER OF COURT

AND 'NOW, this 17th day of 2017, after a custody trial regarding the parents' Cross-petitions for Contempt and Modification of Custody, it is ORDERED that:

The parents' Cross-petitions for Contempt are both dismissed with prejudice.

2. Mother's Petition for Modification of Custody is granted as follows:

a) Effective Sunday, April 30, 2017 at 7:00 p.m., Mother shall have primary physical custody of the Children and Father shatt have periods of partial physical custody every Tuesday from 8:00 a,m, until Wednesday at 8:00 a.m. and alternating weekends from Friday at the conclusion of the Children's school day or 4:30 p,m. if it is a non-school day until Sunday at 7:00 p.m.

b) All other aspects of the parent's custody stipulation dated May 29, 2013 are adopted as an Order of Court and shall remain in full force and effect moving forward.

3. The Court acldtessed the best interests Factors pursuant to 23 Pa. C.Š.A. §5328(a) ill a separate written memorandum filed contemporaneously herewith.

B THE COURT: 2].

CHRIST NA M. SIMPSON

Judge

1101m .11 Mooney, Ill, Esquire
Scott Strausbaugh, E'gqtlire

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY,
PENNSYLVANIA CIVIL

TANYA C. SCHISLER                                    08-s-1412

vs.

BRAD L.          SCHISLER

## Analysis and Discussion of the Statutory Factors

### Procedural Ilisiory

This matter concerns Cross Petitions for Contempt and Modification filed by the parents regarding the children, B.S,S. and C.M.S. (currently ages 13 and 9, respectively). The parents' custody agreement was never adopted as an Order of Court, So both Petitions for Contempt must be dismissed. That leaves competing Petitions for Modification of Custody in which both parents request that primary physical custody be granted unto them, At the conclusion of the trial, Father indicated that he would be fine with continuing the equally shared

CMS/ph-

2017 APR 17 P 12:46 FILED PROTHONOTARY

SCANNED

physical custody schedule. Cutrently, the parents enjoy a schedule of equally shared time with the Children, pursuant to a Custody Stipulation signed by them on May 29, 2013. Mother has physical custody of the Children every Wednesday from 8:00 a.m. until Friday at 4:30 p.m., Father has physical custody every Monday at 8:00 a.m. until Wednesday at 8:00 a.m. The weekends are alternated from Friday at 4:30 p.m. until Monday at 8:00 a.m. The parents were divorced in October 2013.

### Best Interes•l Factors

In ordering any Jòrm ofcustody, the shall dewrmine the besf interes{ ofthe Children by considering all relevanl./èwtors, giving weighted consideration 10 those Jàclors which aJjèct the safèty ofÍhe Children, pursuant to 23 PCI. CLS. §5328 (a).

With respect to Factor l, which party is more likely to encourage and permit frequent and continuing contact between the Children and another party, the Court. finds this factor 10 favor Pvlother. There was credible evidencc that Father has interrupted Mother's facetime communications with the Children on occasion and texts B.S.S. with disparaging remarks

1
2
23

2

regarding Mother and her fiancé and instructs B.S.S. to delete the texts. Father disparages Mother and her fiancé. It must be noted that the parents currently enjoy a schedule of equally shared time with the Children.

Factor 2, regarding the past and present abuse committed by a party or member of party's household, whether there is a continued riSk of harm to the Children or an abused party and which party can provide adequate physical safeguards and supervision of the Children, here was no risk of physical harm to the Children established, althoúgh the Court does have a concern about thc potential long term effects of the extreme training methods and eating habits

encouraged by Father with respect to the Children meeting their weight requirements for wrestling. Father is one of the Children's coaches.

Factor 2.1 ., the information set forth in Section 5329.1 (a) relating to consideration of child abuse and involvement with protective services, is not applicable in this case,

Factor 3, the parental duties performed by each party on behalf of the Children, favors both parents. The parents enjoy equally shared time with the Children and both perform parental duties.

Factor 4, the need for stability and continuity in the child's education, family lifeand community life favors Mother with respect to education for reasons discussed below and otherwise favors both parents.

Factor 5, the availability of extended family, favors Mother.

Factor 6, the Child's sibling relationships, is not applicable as the Children have no other siblings.

Factor 7, the well-reasoned preference orthe Children, favors Father. The Court interviewed the Children in September of 2016. 130th felt that Mother's relationship with her fiancé was üL 100 much, too soon" (Or them, as her fiancé IradQiust moved in with Mother prior to the in camera interview. Mother mel her fiancé in April 2016 during a trip to Jamaica with the

Children. At the time of the interview, B.S.S. favored more time with Father and alternating weekends v,'ith Mother. He indicated that both parents disparage one another. C.M.S. expressed that he did not like Mother's fiancé either and that Mother slaps C.M.S. in the face

Factor 8, the attempts of a parent to turn the Children against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the Children from harm, is not applicable in this case.

Factor 9, which party is more likely to maintain a loving; stable, consistent and nurturin relationship with the Children adequate for the Children's emotional needs, favors Mother,

Credible evidence was presented that Fáther pressures the Children with regard to their training for sports and incessantly drives them to be more ßompetitive. While setting high expectations iti and of itself is often appropriate, Father's anger and disappointment when the Children do no perform as he expects sets tòrth an unhealthy environment for their emotional needs and is detrimental to their self-esteem.

Factor .I O, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the Children, favors Mother. C.M.S. has a 403b plan through school for assistance with reading and writing expression and because of an ADHD diagnosis. The Children do well in school. Mother attends all conferences while Father attends some. Father does not subscribe to the Sapphire Parent Portal to monitor the boys' academic progress, while Mother does subscribe,            is taking medication as prescribed for ADHD, which Father disagrees with because of his concern that it hinders his performance in sports, Father's vitriol toward Mother and her fiancé and his pressure on the Children ig creating a negative impact on the Children. B.S.S. had counseling sessions every two weeks for more than I year. Father attended one session. The Children participate in wrestling. Father is one of their coaches, Father places a great deal of emphasis on sports, perhaps too much Father has high expectations for the hovs to pertOrm well in wrestling. When those expectations are not met, Father becomes angry and speaks to the boys negatively. He is belligerent and uses inappropriate language al. sporting events. He also uses racially motivated

language 10 describe Mother's fiancé.    called B.S.S. "mentally weak". He has unrealistic

expectations of them at times. Father and Mother should ensurc that healthy eating and exercise

habits are observed by the Children. Il seems that Mother is more inclined that do so. Before sustaining a spinal injury which rendered him unable to work, Father was an elementary school gym teacher. IleAesti11ed that. he has master's degree inuxercis•e science and was wrestler

and football prayer. After homework, they lift weights, run or do some physical activity., They also run on the treadmill at Mother's house.

Factor 1 1, the proximity of the residences of the parties, favors the current shared arrangement. The parents live eight minutes apart and in the same school district (Bermudian Springs).

Factor 12, each party's availability to care for the Children or ability to make appropriat child-care arrangements heavily favors Father, as he is not employed at this time due to a woŽ•krelated injury and is thus available for the Children at (ill times, Mother works outside the home

and her schedule was considered in the physical Custody scheme. Mother's fiancé can transport the Children to school if necessary.

Factor 13, the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, does not favor a shared arrangement. The level of

hostility and lack of cooperation has dramatically increased since Mother became involved with her fiancé. Father's emails admitted during the trial show that he routinely refers to Mother as "P.O.S." or "piece of shit" in the address line. He calls her "stupid" and other names. There is a pattern of Father's anger and lack of cooperativeness being heightened when Mother is involved with a new significant other. He seems to have a problem moving on with his life and accepting their divorce, as demonstrated by emails admitted during triat and by his behavior once he learned she was dating her current fiancé. The parents had a more amicable relationshi prior to that, but when Father learned of Mother's romance with her fiancé, he stopped being accommodating and flexible, insisting that they follow the custody stipulation to the letter. The Court is very troubled by Father's use of the mast hatelQ11 racist language toward Mother's fiancé, who is African American. AS mentioned at. the conclusion of the trial, he is teaching the Children how to hate in a most offensive and outrageous manner. Father has also engaged

Maternal Grandfather in this conflict, by showing up on his property and berating him while he was holding one of his grandchildren in his arms.

Factor 14, the history of drug or alcohol abuse of a party or member of a party's household, slightly lhvors Father, as there was credible evidence that Mother consumed

uan a while in Jamaica. This appears to have been isolated

Factor 15, the mental and physical condition of a party or member of a party'S household is not applicable.

Factor 16, any other relevant factors: None.

In summary, the parents were getting along very well (they even took a vacation together with the Children in January 2016) until Mother became involved with her fiancé in the spring of 2016. Mother's newfound romance happened quickly. Father was understandably upset because he found out from a third party that this man whom he had never met was driving the Children to school. It is understandable that Father was upset about not being informed of the relationship and the presence of a new person in the Children's lives. Mother was hesitant t inform him. She felt protective of herself and her fiancé because Father has historically engaged in conflict With Mother whenever she is involved with another man. Justifying Mother's fear, Father has in fact engaged in a campaign of negativity and conflict with respect to Mother's fiancé. The Children are caught in the middle and are the true casualty of this conflict. The undersigned is very concerned about the pressure that Father puts on these boys to perform in sports, which may be detrimental to them if they continue to engage in extreme training and unhealthy eating habits. His anger and negative feedback when they do not succeed also may be destructive to their self-esteem. Father seems to project his fèelings about Mother, the end of their marriage and his disdain for her fiancé onto the Children. Father should learn to compartmentalize his feelings toward Mother from his obligations as co-parent, Right now, he is allowing his anger over a number of issues to overshadow his ability to be a healthy, positive and effective co-parent.

Both parents should promote an open and healthy rapport with the other parent a.l. sporting and other events. The Children should not ever be made to feel badly    sitting with a parent or showing atlèction to a parent or that parent's significant other at these gatherings. The Children should be permitted to carc for other adults in their lives, such as Mother's fiancé.

1

6

An Order Of Court is entered accordingly.

BY THE COURT:

CHRISTINA M. SIMPSON

Judge

John J. Mooney, Ill, Esquire
Scott Strausbaugh, Esquire
CMS/p1r

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CIVIL

T.C.S. 2008-8-1412 . Plaintiff, : vs.ACTION IN CUSTODY

B.L,s.
Defendant.

Thig    is Opinion Pursuant to Pa. R.A.P.

Children's Fast Track Appeal in which Appellant B.L,S. (hereinafter "Father") appeals

from this Court's Order of April 17, 2017, dismissing Mother's petition for contempt[2],

denying FatheFs petition for modification of custody and granting Mother's (T.C.S.'s)

petition for modification of custody in part. The parties are the

parents of two children, B.S.S. and C,M.S (ages 12 and 9 at time of the in camera

interview, respectively), The children were born of the parents' marriage. The parents

were divorced in October 2013. The parents entered into a custody stipulation on May

29, 2013, which enabled them to share legal custody and enjoy a schedule of equal time

with their children, with Father always having Monday/Tuesday overnights, Mother

always having Wednesday/Thursday overnights. and weekends alternating between

parents. The custody stipulati011 was not adapted as a court order at that time, in spite

of the parents- [2] stated intention to the contrary. Mother Tiled a petition tor contempt

and

modification on June 20, 20 \ 6, requegting thnt the court hotct Father in contempt and .

moditÿ the parents' custody stipulation to award Mother sole legal and primary physical

custody of the children because Father's conduct was detrimental to the children's well-

This Opinion was wrilten based upon the undersigned's notes ofleslimony and withoul review of the
atlicial transcript.
The Order of April 17 erroneously refers to "cross-petitions for conlempt". Father did nol file petition

(ör contempt.

SCANNED

being. A custody conference was scheduled for July 26, 2016 and continued at request of Mother's counsel to August 23, 2016. On July 28, 2017, Father filed an answer to Mother's petition for contempt and modification. In paragraph 5 of that answer, Father indicated that he has "no objection to the parties continuing to share legal custody but strongly believes that Father should have majority physical custody". At the custody conference, (he undersigned incorporated the tergtl.s of the parties' custody stipulation of tvlay 29, 2013 as an interim order, authorized hair follicle drug testing of hoth parents, and instructed the parents to file Criminal History/Abuse Verifications for themselves and members of their respective households as required by Pa. R.CP. 1915.3-2 and 23 Pa. C,S. §5329, An in camera interview of the children was conducted on September 15, 2016. Trial began on December 13, 2016 and was not concluded in the time allotted. Further proceedings were scheduled at the convenience of counsel for March 2, 2017 and continued on motion of counsel to April 10, 2017, at which time proceedings were concluded. At trial, the court considered both parents' requests and heard testimony from the parents, Mother's fiancé, the children?s maternal grandfather, and Mother's exboyfriend.

After taking the matter under advisement, the undersigned entered an order on April 17- 2017 and outlined the analysiŠ theretOr in a written memorandum filed contemporaneously with that Order, as required by 23 Pa. C.S, As the parents were not governed by any court order when the alleged contemnible conduct occurred, the

col}tempt claim was dismissed. The undersigned IOund that it was in {he children's best interest to be in Mother's primary phygicai custody and for the parents to continue to have shared [egal custodv. Father was given periods of partial physical custody of *the* children every Tuesday from 8:00 a.m. until Wednesday at 8:00 a.m. and alternating weekends from Friday at the conclusion of the children's school day (or 4:30 p.m. for non-school days) until Sunday at 7:00 p.m. The remaining provisions of the parents' 2013 custody stipulation were incorporated into this order. In fa$hioning theT)hysical custody schedule, the undersigned considered all ofthe factors pursuant to 23 Pa. C.S.A.§5328, along with the practical aspects of Mother's work schedule and Father's status as the more available parent, For the reasons set forth below, it is respectfully requested that the Order of April 1 7, 2017 be affirmed.

"With any custody case, the paramount concern is the best interests of the child." .LR.M. v. .I.E.Å., 33 A.3d 647, 650 (Pa. super, 2011) When deciding petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant factors pursuant to 23 Pa. C.S. §5328(a). ED. v. M.P., 33 A.3d 73, 80 (Pa.Super.2011).

Section 5328 provides as follows:

(a) Factors—in ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration 10 (hose Factors which affect the safety of the child, including lhc following:

(l) Which party is more likely 1.0 encourage and permit frequent and continuing contact; between the child and another party.

(2) The present aud past abuse committed by a party or member of lhc party's household, whether there is a continued risk of harm to the child or an abused

3

party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329, I(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in •the child's education, family life and community lif'ë.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned prefèrence Of the child, based on the child's maturity and judgment.

(8) The attempts Of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend Lo lhe daily physical, emotional, developmental, educn.í.ional and special needs ofthe child.

(11) The proximity ov the residences of the parties.

(12) Each party's availability tu care for the child or ability 10 make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willillgness and ability of the parties to cooperate with one another. A party's elTUrt to protect a child from abuse by another party iŠ not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor23 Pa.C.S. 5328(a).

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." .L.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa.Super.2()II) (emphasis in original), Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." C.B. v. J.B., 65 A.3d 946, 955 (Pa.Super.2013), appeal denied, 620 Pa. 727, 70 A.3d 808 (2013). In expressing the reasons tor its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custodv decision is based on those considerations." NL,J.M. v. AI.L.G., 63 A.3d -33 1, 336 ׃r.2013), appeal denied, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons tor its dccision, vvhich adequately addresses the relevant factors, complies with

Section 5323(d). Ids

In the instant case, factors 1, 2, 5, 10 and 13 favored Mother and factors 12, and 14 favored Father. Factors 2.1, 8. 15 and 16 were inapplicable to this case. Factors 3 and I I favored both parents. Factor 4 favored Mother on the issue of stability of education and both parents on the issues ofiämily and community life. Factor 6 had no 'bearing on the outcome, as these two children have no other siblings and follow the same schedule.

Father raises six issues in his Concise Statement of Matters Complained of on Appeals alleging that the Court abused its discretion or committed an error of law in its analysis of the best interest factors pursuant to 23 Pa. C.S,A. §5328(a). Father's complaints of error are addressed in the court's written memorandum containing a detailed analysis of the aforementioned statutory factors and in comments made to the parents at the conclusion of trial, to which the undersigned defers for additionai explanation, see J.R.M. v. J.EA., 33 A.3d 647, 650 (Pa.Super.2011).

Father's first allegation of error complains that there was no evidence presented at trial that Father communicated to the children or included the children in any communications with Mother that would be construed as "hateful". Evidence received during the in camera interview and trial demonstrated that the children are aware of Father making racially charged commcnl.s regarding tv;ot.lrer's African American fiancé and using racially charged language to describe music thal 13.S,S. had on his Ipod. To put this in contexf, it is important to note that Mother's fiancé is employed in the music business, writing commercial jingles and music IOr a variety of artists. Ile testified that he does nol utilize profanity in his lyrics. During the, trial, Father ndmill.cd that. used racially charged language and expressed regret about that.

Father's second allegation of error alleges that the court inaccurately analyzed factor I, The testimony and evidence clearly demonstrated that Mother is more likely than Father to encourage and permit frequent and continuing contact with the other parent. Specific examples of this are cited in the court's written analysis of this factor and do not bear repeating here.

Father's third allegation of error alleges that the court railed to place any weight on the past and •present physical abuse and mental abuse inflicted by Mother on Father and the children while concluding there were concerns with alleged extreme training methods and eating habits with regard to the children when no evidence was presented that the children were either undernoüfished (jr over trained. The evidence fell short of establishing the children are being abused by either parent, thus this factor was not weighted more heavily than the others. Mother has utilized corporal punishment as a disciplinary measure. B.SS. reported that Mother occasionally slaps in the face but not "everyday", contrary to what C.M.S. had portrayed to Father. C.M.S. reported to the Court that Mother slaps him sometimes. Mother's fiancé acknowledged that Mother is aggressive with the children at times, grabbing them by the arms when disciplining them.

To their credit, bath parents encourage the children to exercise, However, the totality of the evidence supported Mother's and the court's concern regarding the impact ol' Father's pressuring of the children to excel in sports and his insistence. on frequent exercise. This concern is supported by 10110wi11g examples: Father, who is the children's wrestling coach, insists that the children should run five kilometer workouts befOre school and lift weights and/or run after school, Father's belligerent and vulgar

7

behavior at the children's wrestling matches, Father's sharp criticism of the children when they lose a match, B.S.S. having a plastic bag wrapped around his torso underneath his clothing to aid in weight loss for wrestling, and Mother's testimony that the children sometimes refuse to eat so they can maintain a certain weight for wrestling. Father does not encourage success in a positive, healthy way. He is not supportive, nor constructive when rhe children lose a wrestling match. Father sent B.S,S. a text message calling him "mentally weak". Mother's concerns in this regard are also corroborated by the testimony of maternal grandfather. Father's emphasis OJI sports iŠ further exemplified by his enrolling the children in two youth wrestling programs at two different schools without first consulting Mother. The undersigned addressed these concerns with the parents during the proceedings and in the court's written memorandum. A healthier, more positive path to athletic success was encouraged, There was no evidence of any founded or indicated reports of abuse for this family, thus factor 2.1 was deemed inapplicable.

Father's fourth allegation of error alleges that the court failed to properly analyze factor 4. Father's fifth allegation of error alleges [hat [he court failed to properly analyze factor 10, As these factors are interrelatedn they are addressed in tandem. Mother was favored on the issue of education, and both parents wcrc favored with regard 10 stability and continuity of family litè and community lilè. While Mother has moved aroillld much more than Father and had several significant others since they scparated, the parents currently reside in the same school district, and in close proximity to each other.
Mother's current living situation appears 10 be stable. She and her fiancé testified that they do not plan to relocate until the children graduate.

As discussed in the context Of Factor 10, it was clear that Mother is more engaged with the children's educational needs and C.M.S.'s needs with respect to his ADHD diagnosis and 403b educational plan. Mother initiated the testing that led to C.M.S. 's diagnosis and the inquiry that led to engagement with the school psychologist and 403b plan to help C.M.S. with reading and writing expression. Father was aware of these ntments, but did not attend, Father does not subscribe to the school's parent portal; Mother does subscribe. Father hag not been consistent in admini$terjng prescribed medication to C..M.S,, so Mother arranged for it to be dispensed by the school nurse. Father's sixth allegation of error alleges that the court failed to properly analyze factor 13. Post separation, the parents generally had an amicable co-parenting relationship, except for times when Mother became involved with new romantic partner. This pattern continued, in that the parents were cooperative and flexible with one another until Mother became involved With her fiancé, which re•ignited the coparenting conflict. That conflict continues to exist. It is not beneficial for the children. As discussed 'With the parents at the conclusion of the trial, both parents should have handled the introduction of Mother's fiancé into the children's lives differently. When parents clo not have an amicable and cooperative co-parenting relationship, this makes an equally shared arrangemcnf.. difficult. The record is clear l.h;ul Father's behavior is primarilv exacerbating that conflict. This was corroborated by Maternal Grandfather's testimony.

In fashioning [he schedule tor the children and in consideration of al! of the §5328 tactors, the undersigned attempted to balance the need to lessen the impact of Father's negative co-parenting and pressuring behaviors on the children with Father's

status as the more available parent and the close geographic proximity of the parents. During the in camera interview in September 2016, the children expressed a desire for more time with Father and cited concern that Mother's relationship with her fiancé was "too much, too soon" for them. Several months passed until the trial was concluded in April 2017 and there was credible testimony at that time that the children's relationship with Mother's fiancé had improved.

For alt of the aforementioned reason$, the undersigned respectfully requests Your Honorable Court to affirm the Order dated April 17, 2017-

BY THE COURT,

_____
Christina M. Simpsona J.

Date: May 31, 2017

John J. Mooney, m, Esquire
Scott J. Strausbaugh, Esquire